**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| JEFFREY DIAMOND and<br>GEORGIA DIAMOND,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. BANK, N.A.,<br>STELLAR INVESTMENTS TRUST,<br>FEDERAL HOUSING FINANCE AGENCY,<br>OCWEN LOAN SERVICING, LLC and<br>McCABE, WEISBURG & CONWAY, LLC,<br><br>    Defendants. | Civil Action No. TDC-19-1458 |

**MEMORANDUM OPINION**

Plaintiffs Jeffrey Diamond and Georgia Diamond (collectively, "the Diamonds") have filed this civil action against Defendants U.S. Bank, N.A. ("U.S. Bank"), Stellar Investments Trust ("Stellar"), the Federal Housing Finance Agency ("FHFA"), Ocwen Loan Servicing, LLC ("Ocwen"), and McCabe, Weisburg & Conway, LLC ("McCabe"), in which they assert multiple federal and state law claims relating to the foreclosure sale of their home. Pending before the Court are four separate Motions to Dismiss filed by U.S. Bank and Ocwen; the FHFA; Stellar; and McCabe. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be GRANTED.

**BACKGROUND**

On October 25, 2001, the Diamonds purchased a home at 18 Stapleford Hall Court in Potomac, Maryland ("the Residence") for $800,000. On October 19, 2005, as part of the process of securing a loan for $1.5 million, the Diamonds executed a Deed of Trust granting a security

interest in the Residence to the lender, First Savings Mortgage Corporation. That loan was then securitized and came into the possession of Defendant U.S. Bank.

On January 1, 2011, the Diamonds defaulted on their loan. Several years later, on March 28, 2016, Ocwen—as the loan's servicer—initiated a foreclosure proceeding against the Residence ("the Foreclosure Action"). In the Foreclosure Action, several McCabe attorneys were named as the foreclosing substitute trustees.

On June 13, 2018, U.S. Bank, acting as Trustee for Residential Mortgage Securities 1, Inc., Mortgage Pass Through Certificates, Series 2007-S6 ("U.S. Bank"), purchased the Residence in a public auction for $1,675,000. The Circuit Court for Montgomery County, Maryland ("the Circuit Court") entered an initial Order of Ratification of Sale on December 11, 2018. On January 7, 2019, U.S. Bank obtained a Trustees' Deed to the Residence. Then, on March 12, 2019, the Circuit Court entered a Final Order of Ratification of the foreclosure sale. On April 3, 2019, the Circuit Court issued an order awarding possession of the Residence to U.S. Bank.

Previously, however, on March 28, 2019, U.S. Bank sold the Residence to Stellar for $1,444,000. Stellar then brought an action against the Diamonds in the District Court of Maryland for Montgomery County seeking possession of the Residence. After a trial at which the Diamonds appeared, the court granted judgment and possession to Stellar on July 3, 2019. However, the court stayed the judgment and set an appeal bond of $130,000. Before posting the bond, however, the Diamonds removed that case to the United States District Court for the District of Maryland. The court (Hazel, J.) then remanded the case to the state court for lack of jurisdiction. *Stellar Investments Tr. v. Diamond*, No. GJH-19-1982, 2019 WL 5190693, at *1-2 (D. Md. Oct. 15, 2019).

On May 17, 2019, during their litigation with Stellar, the Diamonds filed the present action in this Court. The Complaint asserts claims under both federal and state law. Under federal law,

they assert (1) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (2018); (2) a claim against the FHFA under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); and (3) a claim against the FHFA for constructive trust, which they characterize as a violation of the rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.  Under state law, they assert claims for (1) a violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 to 14-204 (LexisNexis 2013); and common law claims of (2) ejectment; (3) quiet title; (4) equity of redemption; (5) slander of title; (6) breach of fiduciary covenant; (7) breach of contract; (8) breach of warranty; and (9) equitable relief.  In an Amended Complaint filed on October 9, 2019, the Diamonds added to the existing causes of action a claim under United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 (2019).

## DISCUSSION

In their Motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants argue that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and that all of the Diamonds' claims are barred by *res judicata* or collateral estoppel based on the proceedings in Maryland state court.  In addition, they assert various arguments why, on the merits, all of the Diamonds' counts fail to state a claim.  The Diamonds have not responded to any of the Motions.

**I.     Legal Standards**

Defendants' argument based on the *Rooker-Feldman* doctrine seeks dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  Rule 12(b)(1) allows a defendant to move for

dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Defendants' remaining arguments seek dismissal under Rule 12(b)(6) for failure to state a claim. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Although the Court may consider documents beyond the pleadings in deciding a motion to dismiss under Rule 12(b)(1), *Velasco*, 370 F.3d at 398, typically, when deciding a motion to

dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court will consider the exhibits the Diamonds have attached to their Complaint, which consist of various documents relating to their mortgage and the Foreclosure Action. Courts are also permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, Defendants have attached various documents to their Motions that relate to both the Diamonds' mortgage and the Foreclosure Action. Where these documents are also integral to the Diamonds' claims and their authenticity has not been challenged, the Court may consider them as well. Moreover, the documents relating to the Foreclosure Action will also be considered as subject to judicial notice, as "courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also Zak*, 780 F.3d at 607 ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201)).

Because this Court's subject matter jurisdiction over this case derives from the federal claims asserted in the Complaint and the claims against the FHFA, the Court addresses those claims first.

## II. Fair Debt Collection Practices Act

In Count Five of the Complaint, the Diamonds allege a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. Defendants argue that the FDCPA claim should be dismissed under the *Rooker-Feldman* doctrine, *res judicata* and collateral estoppel, and for failure to state a claim.

### A. *Rooker-Feldman* Doctrine

Defendants argue that this Court lacks jurisdiction over the Diamonds' FDCPA claim based on the *Rooker-Feldman* doctrine, a jurisdictional doctrine that draws its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Thana v. Board of License Commissioners for Charles County*, 827 F.3d 314 (4th Cir. 2016), the United States Court of Appeals for the Fourth Circuit described this doctrine as barring federal jurisdiction "in cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 320 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis removed). This doctrine has a "narrow focus." *Id.* It "assesses only whether the process for appealing a state court judgment to the Supreme Court . . . has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.* However, "if a plaintiff in federal court does not seek review of the state court judgment itself but instead '*presents an independent claim*, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.'" *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). To the extent that a ruling in the federal action cannot occur without effectively finding that the state court had erred, *Thana* counsels that

6

such a conflict is to be addressed by "the application of traditional preclusion principles." *Id.* at 322.

*Thana* is instructive here. In that case, the court rejected the application of the *Rooker-Feldman* doctrine where a restaurant that had previously had its alcoholic beverage license revoked by a local licensing board brought suit against that board, claiming that the revocation of its license violated the First Amendment to the United States Constitution. *Id.* at 317-18. The court held that the *Rooker-Feldman* doctrine did not apply, in part because the two actions at issue in *Thana*—the revocation of an alcoholic beverage license by a local licensing board and the First Amendment suit in federal court—were distinct. *Id.* at 321. The revocation proceeding dealt only with the restaurant's license, was subject to only limited appellate review, and could not result in the award of damages to the restaurant. *Id.* at 321-22. The federal action, by contrast, raised a constitutional challenge to the revocation over which the federal court had original jurisdiction, and it sought damages in addition to declaratory and injunctive relief. *Id.* at 322. Similarly, the preceding state action here was a limited one, as a Maryland foreclosure proceeding focuses on gaining possession of a property, Md. Code Ann., Real Prop. § 7-105 (LexisNexis 2015), while the FDCPA focuses on providing relief, including damages, from wrongful debt collection activities and practices. *See, e.g.*, 15 U.S.C. § 1692f (prohibiting several types of debt collection practices); 15 U.S.C. § 1692k (providing for damages under the FDCPA). Where the present FDCPA claim is an "independent concurrent action" and not an action seeking review of the Foreclosure Action itself, the *Rooker-Feldman* doctrine does not apply. *See Thana*, 827 F.3d at 321. In light of *Thana*, Defendants' citation to *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 238 (4th Cir. 2013), an unpublished decision that pre-dates *Thana*, is unpersuasive. The Court finds that the *Rooker-Feldman* doctrine does not bar consideration of the Diamonds' FDCPA claim.

**B.      Collateral Estoppel**

Defendants also argue that the Diamonds' FDCPA claim is barred by the doctrines of *res judicata* and collateral estoppel. *Res judicata* mandates that "once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter." *In Re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004). Collateral estoppel, also known as issue preclusion, is a subset of *res judicata*. *Id.* at 326. Under Maryland law, collateral estoppel applies where (1) the issue to be precluded is identical to one previously decided; (2) there was a final judgment on the merits; (3) the party against whom estoppel is to be applied was a party or in privity with a party in the prior adjudication; and (4) the party against whom estoppel is to be applied was given a fair opportunity to be heard on the issue. *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 630 A.2d 245, 250 (Md. 1993); *see also Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (holding that the "preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered").

Here, all the elements of collateral estoppel are satisfied as to the Diamonds' FDCPA claim. The FDCPA generally "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (quoting 15 U.S.C. § 1692d). In asserting a violation of the FDCPA, the Diamonds do not allege the commission of any of the specific prohibited practices listed in the FDCPA, *see* 15 U.S.C. §§ 1692b–1692f, so the count could only fairly be construed as asserting claims based on the invalidity of the debt, such as that Defendants made a "false representation of . . . the character, amount or legal status of any debt," 15 U.S.C. § 1692e(2), or sought to collect a debt where the amount was not "expressly authorized by the agreement creating the debt or

permitted by law" or by taking or threatening to take "any nonjudicial action to effect dispossession" of property if "there is no present right to possession of the property claimed as collateral through an enforceable security interest," 15 U.S.C. § 1692f(1), (6).  Such claims could succeed only if Defendants had no right to enforce the mortgage loan and no right to foreclose on the Residence.  Here, however, these issues were necessarily litigated in the Foreclosure Action. During those proceedings, which began on March 28, 2016, the substitute trustees, represented by McCabe, filed the action, and the Diamonds, Ocwen, and U.S. Bank were all parties to the litigation and represented by counsel.  During the proceedings, the Circuit Court ordered the scheduling of the foreclosure sale, issued a Final Order of Ratification on March 14, 2019, and entered Judgment of Possession on April 3, 2019 in favor of U.S. Bank.  In so ruling, the Circuit Court necessarily decided the issues of whether U.S. Trust had a valid right to enforce the mortgage loan and the substitute trustees had the right to foreclose.  The Circuit Court's rulings represented a final judgment on the merits.  *See Jacobsen v. Barrick*, 250 A.2d 646, 648 (Md. 1969) ("[T]he law is firmly established in Maryland that the final ratification of the sale of property in foreclosure proceedings is *res judicata* as to the validity of such sale, except in case of fraud or illegality, and hence its regularity cannot be attacked in collateral proceedings." (quoting *Hersh v. Allnut*, 250 A.2d 269 (1969))); *Scott v. Bierman*, 429 F. App'x 225, 230 (4th Cir. 2011) (stating that under Maryland law, an order of ratification "provide[s] a final resolution of all matters relating to the foreclosure sale").  Finally, where the Diamonds filed several motions during the Foreclosure Action that were ultimately denied, including a motion to stay the foreclosure and a motion to dismiss the foreclosure on which they received a hearing, they had a full and fair opportunity to litigate these issues.  Where the Diamonds' FDCPA claim cannot succeed if Defendants had the right to enforce the mortgage loan and to foreclose on the Residence, but those issues were

9

previously litigated and decided against them, the FDCPA claim necessarily fails based on collateral estoppel and will be dismissed with prejudice. *See U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320 (4th Cir. 2010) (denying leave to amend when amendment would be futile).

**III.** *Monell*

In Count Eleven of their Complaint, the Diamonds assert a claim against the FHFA under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), based on the allegation that "[t]he program and subsidy of the federal government in underwriting nationwide mortgage fraud, the massively wrongful use of foreclosure proceedings and widespread violations of statutory consumer protections besides other Acts of Congress designed to regulate markets and contractual relations amounts to an unconstitutional practice, law, policy, or procedure." Compl. ¶ 144, ECF No. 1. *Monell*, however, held only that local governments qualify as "persons" under 42 U.S.C. § 1983 and so may be sued under that provision based on an unconstitutional custom or policy of the local government. *Monell*, 436 U.S. at 690. The FHFA is not a local government. Rather, the FHFA is an "an independent agency of the Federal Government." 12 U.S.C. § 4511 (2018). Even if the Diamonds' *Monell* claim were construed as a claim under § 1983 more generally, the FHFA would still be an improper defendant because it is a federal agency. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) (holding that because § 1983 proscribes discriminatory conduct "accomplished under the color of the law of any State," it "does not reach . . . actions of the Federal Government and its officers"). Likewise, even if the Court construed the Diamonds' claim as one under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), it would still dismiss the claim because federal agencies may not be sued for

constitutional claims under *Bivens*. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994). The Court will therefore dismiss Count Eleven against the FHFA, the only party against which it is brought.

### IV.     Constructive Trust

For similar reasons, the Court will dismiss the Diamonds' claim in Count Twelve of a constructive trust that violates the Fourteenth Amendment. "The Fourteenth Amendment applies to actions by a State." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987). It does not apply to the federal government. *Id.* Consequently, any claim for a constructive trust under the Fourteenth Amendment brought against a federal agency and private actors must fail. The Court will thus dismiss this count.

### V.     Rule 10b-5

In their Amended Complaint, the Diamonds attempt to add a securities claim under Rule 10b-5. This claim also fails. Rule 10-b-5 "broadly prohibits deception, misrepresentation, and fraud 'in connection with the purchase or sale of any security.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) (quoting 17 C.F.R. § 240.10b-5); *see also* 17 C.F.R. § 240.10b-5. Although the Diamonds allege that "[t]he defendant's deed or line of real estate is a federally regulated security subject to SEC Rule 10b-5," Am. Compl. ¶ 2, ECF No. 40, neither the Deed of Trust nor the Residence qualify as federal securities. *See Bellah v. First Nat'l Bank of Hereford*, 495 F.2d 1109, 1113-14 (5th Cir. 1974) (holding that a promissory note and the deed of trust securing it were not securities for purposes of federal securities laws). Moreover, only those who have purchased or sold a security may bring a claim under Rule 10b-5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975). The Diamonds have not asserted that they purchased or sold the deed or any other alleged federal security. Accordingly, the Court will dismiss the Rule 10b-5 claim.

## VI. FHFA

Having concluded that all of the Diamonds' federal claims must be dismissed, the Court next considers the state law claims against the FHFA.

### A. Maryland Consumer Debt Collection Act

In Count Four, the Diamonds allege a violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 to 14-204. The MCDCA prohibits a "collector" from using a variety of practices in "collecting or attempting to collect an alleged debt." Md. Code Ann., Com. Law § 14-202. It defines a collector as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). However, the Diamonds have not alleged that the FHFA took any action against them—much less one prohibited by the MCDCA—in connection with the collection of a debt. To the extent the Diamonds allege any debt collection activity, it relates to the Foreclosure Action, in which the FHFA played no role. *See supra* Section II.B. Where the Diamonds have failed to allege any debt collection activity by the FHFA, the Court will dismiss the MCDCA claim against it.

### B. Breach of Contract

In Count Eight, the Diamonds allege a breach of contract. The only contract that the Diamonds refer to is the "mortgage servicing contract." Compl. ¶ 125. The Diamonds have not alleged that the FHFA was a party to this contract. In the absence of such an allegation, the Court will dismiss this claim. *See Hand v. Evans Marble Co. of Balt. City*, 40 A. 899, 900 (1898) ("A man cannot incur liabilities . . . from a contract to which he is not a party."); *see also Safer v. Perper*, 569 F.2d 87, 94 (D.C. Cir. 1977) ("The basic Maryland rule is that privity of contract is a prerequisite for recovery on that contract.").

### C. Quiet Title and Equity of Redemption

In Counts Two and Three, the Diamonds assert a quiet title action and an action to assert the equity of redemption. Quiet title actions may be brought under Maryland law to "establish title against adverse claims to property." Md. Code Ann., Real Prop. § 14-602. The Diamonds' equity of redemption claim relies on the assertion that U.S. Bank "could not be the noteholder" "do[es] not have any interest in the mortgage or the 'loan,'" and has no right to pursue foreclosure. Compl. ¶¶ 81, 84. Both claims are barred by collateral estoppel because they can succeed only if Defendants had no right to enforce the mortgage loan and no right to foreclose on the Residence, yet those issues were decided against the Diamonds in the Foreclosure Action. *See supra* part II.B. As with the FDCPA claim, all of the requirements of collateral estoppel are met, *see id.*, so the Court will dismiss these claims.

### D. Remaining Claims

As for the remaining state law claims, where the allegations fail to mention the FHFA, the Court concludes that the Diamonds did not assert those claims against the FHFA. To the extent that, in those claims or more generally, the Diamonds have made allegations in the Complaint about the FHFA, they consist of claims that the securitization of the Diamonds' mortgage was improper or somehow invalidated their obligations under the mortgage loan. Courts, however, have "routinely rejected challenges to loan securitization," including the claim that it renders the notes unenforceable. *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 516 (D. Md. 2016); *see, e.g., Lawson v. MERS, Inc.*, No. 13-2149-AW, 2013 WL 4482953, at *3 (D. Md. Aug. 20, 2013) ("Judges in this District, including this Court, have repeatedly rejected the notion that, as a general matter, the securitization of notes renders them unenforceable."); *Reed v. PNC Mortg.*, No. AW-13-1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) ("Even assuming that his loan was

securitized, Plaintiff has presented no basis for the Court to declare the deed of trust invalid or unenforceable.").

Moreover, to the extent that the Diamonds are seeking injunctive relief against the FHFA based on its alleged role as receiver for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, the Court is barred from granting such relief. *See* 12 U.S.C. § 4617(f) ("Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver."); *Cty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 990 (9th Cir. 2013) (holding that so long as a challenged action was "a lawful exercise of FHFA's power as conservator . . . the courts have no jurisdiction over Plaintiffs'–Appellees' claims, and this case must be dismissed").

Accordingly, the remaining claims against the FHFA will be dismissed, and the FHFA will be dismissed as a Defendant.

**VII.   State Law Claims**

Where all federal claims and all claims against the FHFA will be dismissed, the Court no longer has subject matter jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C. § 1346. The Diamonds generally claim that federal question jurisdiction exists based on the assertion that their loan was likely underwritten by the Federal Home Loan Mortgage Corporation, which they allege has been in receivership to the FHFA. But in the absence of any cause of action under federal law, federal question jurisdiction ordinarily does not exist. *See* 28 U.S.C. § 1331 (2018). Although a rarely applicable exception can be made when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," the Diamonds have identified no such question.

*See Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 28 (1983)).

The Court therefore must consider whether it may and should assert jurisdiction over the remaining state law claims pursuant to diversity jurisdiction under 28 U.S.C. § 1332. This statute "has long been interpreted to require complete diversity: no plaintiff may be a citizen of the same state as any defendant." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 222 (4th Cir. 2019). Here, the Diamonds, who are citizens of Maryland, have alleged that both Stellar and McCabe are also citizens of Maryland, and the record specifically supports the conclusion that Stellar is a citizen of Maryland. Where the burden of establishing diversity jurisdiction rests on the party asserting it, *Evans*, 166 F.3d at 647, and the Diamonds have pleaded that both they and multiple Defendants are citizens of Maryland, there is no diversity jurisdiction. *See* 28 U.S.C. § 1332.

Although the Court could assert supplemental jurisdiction over the Diamonds' remaining state law claims, it will exercise its discretion to decline to do so. *See* 28 U.S.C. § 1367(c)(1) (providing that a district court may dismiss a claim over which it could exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction"). The remaining state law claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be GRANTED. A separate Order shall issue.

Date: May 11, 2020　　　　　　　　　　　　　　　　/s/ *Theodore D. Chuang*
　　　　　　　　　　　　　　　　　　　　　　　　THEODORE D. CHUANG
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge